262 So.2d 631

**Briscoe Guy POELLNITZ**

v.

**STATE.**

**I Div. 183.**

Court of Criminal Appeals of Alabama.

May 16, 1972.

William J. Baxley, Atty. Gen., and John A. Yung, IV, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges murder in the first degree. Appellant was convicted of murder in the second degree, resulting in sentence of fifty years in the penitentiary.

The evidence is undisputed that on May 7, 1970, the appellant, Briscoe Guy Poellnitz, shot and killed one Robert Bolar with a twenty-two caliber rifle. The incident occurred in the Yearlingville community in Baldwin County, Alabama.

Taylor Wilkins, Jr., Bay Minette, for appellant.

Bertha Bolar, wife of the deceased, testified that on the date in question the deceased went outside their house and stood on the steps outside the back door; that the deceased then remarked to the appellant, who was standing on his own front porch approximately fifteen to twenty feet away, "Good morning." After this the appellant cursed the deceased, then ran into his own house and, arming himself with a rifle, returned to his porch. He then fired three shots at deceased, all three shots striking deceased in the back and resulting in his death. It was her testimony that there had been no previous difficulties between her husband and the appellant.

Appellant testified that he killed the deceased in self-defense; that he came outside on his porch on that particular morning, and the deceased told him, "You are going to see me this morning." Appellant then replied, "You've been down here again bothering my wife and children," to which the deceased responded, "Yes and you're going to get yours." Appellant testified that he then ran inside his house, got his rifle, and, standing in the doorway of his house, fired his rifle three times without aiming it at the deceased. It was appellant's testimony that the deceased had a rifle "hanging in his hand" at the time and that he fired his rifle to prevent the deceased from shooting him.

Appellant's testimony was that the deceased used his house as a shooting target, oftentimes shooting under his house; that the deceased had bothered his wife, his children and himself in the past; and that he had been very much afraid of deceased.

The appellant's wife testified that the deceased had been harassing her children, and this was the primary factor which motivated the shooting.

I

 Appellant first contends that he was erroneously denied the right to show as part of the res gestae that deceased was usually armed at the place where the incident oc-

curred. This alleged error occurred during cross-examination of Bertha Bolar, wife of deceased. From the record:

"Q. Now on several occasions you saw your husband out in the yard with his rifle, did you not?

"A. I did.

"Q. You did?

"A. I did.

. . . .

"Q. You know as a fact most every time he left that house—not just out here in the yard—but any where he carried that rifle with him?

"A. Some of the time.

"MR. HENDRIX: I object to this.

"MR. WILKINS: This is cross examination.

"MR. HENDRIX: But unless it is connected with a threat against this defendant—

"THE COURT: Sustain the objection.

"MR. WILKINS: I except.

. . . .

"Q. —Why did he take the gun in the yard every time he came outside?

"A. He didn't.

"Q. You just said he did?

"A. I said some of the time.

"MR. HENDRIX: Object to that.

"WITNESS: I said some of the time.

"THE COURT: Don't answer when one is objecting. I sustain the objection.

"Q. Did you say most of the time when he went outside his house either in his own yard or any where he carried the rifle with him?

"A. Most of the time."

Inasmuch as the record above affirmatively reflects that such testimony was in

fact given before the jury four different times for their consideration, we need not be here concerned with the correctness of the trial judge's ruling as it is clear that no prejudice resulted to the appellant. Supreme Court Rule 45.

## II

■ On further cross-examination of the same witness, Bertha Bolar, the question was asked, "What did he carry it for," such question having reference to the deceased and his rifle.

That question called for testimony as to the mental operations of another, and the State's timely objection was properly sustained. Bailey v. State, 107 Ala. 151, 18 So. 234; Spurlock v. State, 17 Ala.App. 109, 82 So. 557; Whigham v. State, 20 Ala.App. 129, 101 So. 98; Hembree v. State, 20 Ala. App. 181, 101 So. 221; Bynum v. State, 20 Ala.App. 619, 104 So. 834.

## III

The record shows that the following transpired at trial during cross-examination of the State's witness, W. O. Garner, Chief Deputy Sheriff of Baldwin County, in relation to the character of deceased:

"Q. Do you know how long you have known, or had known Buddy Bolar?

"A. I have known Buddy for several years.

"Q. Do you know his reputation down there where he lived in Belforest for violence?

"A. I could not say that I do or I don't —I don't know.

"Q. Do you know his general reputation in that area?

"A. I have heard people speak good of Buddy and I have heard people speak bad of him.

"Q. How about his reputation for being a violent person?

"A. Well, I would not say that he was violent. Buddy has worked for me on several occasions.

"Q. I would like to object to that answer——

"MR. WILKINS: I would like to object to that answer and ask the Court to admonish the jury not to consider that last answer.

"THE COURT: What is that about—he has worked for me on several occasions —That, gentlemen of the jury, was not responsive to the question asked and I instruct and direct you to disregard that part of his answer.

"MR. WILKINS: For the sake of the record I would like to make a motion at this time for a mistrial.

"THE COURT: Deny the motion.

"MR. WILKINS: Except."

Counsel for appellant argues that the nonresponsive portion of Deputy Garner's answer, i. e., "Buddy has worked for me on several occasions," was so highly prejudicial to appellant that its prejudicial effect could not be excluded from the minds of the jurors, and that on appellant's motion the trial judge should have declared a mistrial.

■ The rule covering this has been stated by our Supreme Court in Shadle v. State, 280 Ala. 379, 194 So.2d 538:

". . . [I]t is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion. . . ."

■ We note that the trial judge took the necessary steps to remove any possible prejudicial effect of the improper statement. We do not feel that the appellant's

rights were prejudiced by the volunteered statement; consequently, we find no error in the denial of appellant's motion for a mistrial. Thomas v. Ware, 44 Ala.App. 157, 204 So.2d 501; Carroll v. State, 45 Ala.App. 92, 225 So.2d 198.

## IV

On redirect examination of the State's witness, Deputy Garner, the following transpired:

"Q. You stated on cross examination by Mr. Wilkins that you had seen Robert Bolar have a pistol in his possession, or on his person on many occasions?

"A. Yes sir.

"Q. During the time you saw him have a pistol was he a commissioned Deputy of Baldwin County, Alabama?

"MR. WILKINS: I object.

"THE COURT: Overrule the objection.

"MR. WILKINS: Except.

"A. Yes sir, he was."

At a later point in the trial, witness Noah Autrey testified as State's witness as follows:

"Q. I want to clarify one thing: When you said that Mr. Wilkins asked you if you knew his reputation for being a violent person. Do you know what he means by being a violent person?

"A. Yes sir—if Buddy had been mean or pushing people around or things.

"Q. If he had been mean or pushing people around?

"A. Yes sir, having his way.

"Q. You said that was when he was with the law?

"A. Yes sir.

"Q. What you mean he enforced the law at those places if he had to push people around?

"MR. WILKINS: I object.

"THE COURT: He is trying to show what he meant. I overrule the objection.

"MR. WILKINS: Except.

"Q. Is that what you mean?

"A. He still did it after he got off the police force.

"Q. You never had any trouble with him, did you Noah?

"A. No sir."

The gist of the complaint against the introduction of the evidence set forth above is that it was irrelevant and prejudicial to the appellant's rights since it disclosed to the jury the fact that the deceased had been a law enforcement officer.

In dealing with rebuttal testimony, the Alabama Supreme Court has stated that the admission or rejection of rebuttal evidence is largely in the sound discretion of the trial court. Caldwell v. State, 203 Ala. 412, 84 So. 272; Floyd v. State, 245 Ala. 646, 18 So.2d 392.

Where, as here, the defendant had introduced testimony that the deceased had, on several occasions, been seen with a pistol, we feel Deputy Garner's testimony to be relevant in that it tended to show under what circumstances the deceased carried a pistol. Without the benefit of this testimony, the jury might have been misled into believing that the deceased went about armed with a pistol for some reason other than the fact that he was a law enforcement officer. The jury was entitled to have before it this evidence to put the matter in its true light.

Nor do we feel that the court acted erroneously in allowing the question to be asked of Noah Autrey, "What you mean he enforced the law at those places if he had to push people around?" The district attorney was attempting to have the witness explain what he meant by his previous testimony, and we deem the evidence admissible for this purpose. See Mitchell v. State, 133 Ala. 65, 32 So. 132.

## V

We next consider appellant's claim that the judgment entry is insufficient to support his conviction. The judgment entry, as set out in the record, is as follows:

"JUDGMENT ENTRY

"10/29/70; Comes the State of Alabama by its Solicitor, comes the defendant also in his own proper person by his attorney and the defendant being arraigned in open Court to answer to said indictment pleads and says that he is not guilty in manner and form as charged therein.

"Thereupon came a jury of good and lawful men and women, to-wit: Charles L. Holtzabpfel, and eleven others, who being impanelled and duly sworn according to law on their oaths say: We the Jury find the defendant guilty of murder in the 2nd Degree and fix his punishment at imprisonment in the State Penitentiary for 50 years.

"The Defendant being asked if he had anything to say as to why the sentence of the law should not be passed on him, says nothing. It is therefore considered and adjudged by the Court that the defendant be and he is hereby sentenced to Fifty (50) years in the State Penitentiary."

While it appears that the trial judge did not formally pronounce the defendant guilty before sentencing, the record clearly shows that the jury found the defendant guilty of murder in the second degree and fixed punishment at fifty years in the penitentiary.

In Palmer v. State, 168 Ala. 124, 53 So. 283, the court stated that, "When . . . there is a sentence by the trial court in compliance with the verdict of guilty, as disclosed by the judgment entry, there is implied a judgment of guilt, and the judgment of conviction is shown to be sufficient."

Thus, although we would deem it to be better practice for the trial judge to formally adjudge the defendant guilty before rendering sentence, our courts have consistently held that an implied judgment of guilt results where there appears a valid sentence in proper form by the court in compliance with a verdict of guilt. Palmer v. State, supra; Elliott v. State, 283 Ala. 67, 214 So. 2d 420; Wells v. State, 19 Ala.App. 403, 97 So. 681; Shirley v. State, 144 Ala. 35, 40 So. 269; Talbert v. State, 140 Ala. 96, 37 So. 78; Ex parte Roberson, 123 Ala. 103, 26 So. 645.

On the authority of the cases cited, we hold the judgment to be sufficient to support appellant's conviction.

No error appearing in the record, the judgment of the trial court is due to be and is hereby affirmed.

Affirmed.

PRICE, P. J., and CATES and ALMON, JJ., concur.