TYSON, Judge.
The indictment charged the appellant with the felonious assault upon an officer while in the performance of his duties, contrary to law.[1] The jury found the appellant “guilty as charged” and the trial court set sentence at fifteen years imprisonment in the penitentiary.
Deputy Sheriff John D. Shakespear testified that on July 3, 1975, he was a deputy sheriff of Covington County and received a telephone call around 6:00 or 6:15 that evening while he was on duty at the courthouse. He stated that the call was to proceed to the home of a Mr. Washington, the father of the appellant. He testified that he was on duty, in full uniform with the patches on his shirt indicating that he was a full-fledged deputy sheriff. He stated that Deputy Stallings told him about another paper that needed to be served in Florala, Alabama for an attorney and he stated that he would go to Florala and *156 serve it and would stop by the Washington home in response to the telephone call. As he was attempting to leave the courthouse, another telephone call came in from the Washington home and that he told the father that he would be there as quickly as he could. He also stated that he advised the elder Washington that he should sign a warrant and that the call was about a check which his son was supposed to have taken from the family mailbox. He stated that he told Mr. Washington, Sr., he would be out in a few minutes. He testified that upon arrival at the home that he went inside and Mr. Washington, Sr., his wife, daughter and two grandchildren were seated at the supper table. He asked them where Johnnie Washington, Jr., was and they said that he was back in his bedroom and about that time Mrs. Washington spoke up and said, “the sheriff was here to talk to you.”
She also said that her son had a loaded rifle as he had been out shooting snakes. She stated that someone called to the son and he came down the hall with a rifle in his hand and pointed it right in his face and said to “get your g. d. a. out of here.”
The officer stated that he said, “what is wrong with you,” that, “I came out here to talk to you about the check,” and the appellant again told him to get out of there and started toward him with the rifle. The officer then stated that he walked out on the porch and walked toward his car and got in and began backing up. He stated that as he started forward he heard the gun fire and something like “a ton of bricks hit the top of the car.” He said that he saw the appellant raise up with the gun again and that he drove on down the road where he called to Deputy Stallings and Deputy Harrell to assist him. He stated that later Trooper Fowler and Trooper Brown and also Trooper Anderson drove up. He testified that they went back to the house and placed the appellant under arrest and brought the rifle back to the Sheriff’s Office at the courthouse.
On cross-examination Deputy Shake-spear was asked did he go down there to talk to Johnnie Washington, Jr., as a personal favor to Johnnie Washington, Sr., to which the officer replied, “No, sir. Not as a favor but as a complaint.” R.P. IS.
At the close of Deputy Shakespear’s testimony the appellant moved for a directed verdict on the ground the State failed to prove a prima facie case that the officer was “in active discharge of his lawful duty.”
Johnnie Washington, Sr., testified that Deputy Sheriff Shakespear was a good friend of his family and in fact had often come by his home and on occasion had even spent the night there. He testified that on July 3, 1975, he had telephoned Deputy Shakespear about a check that his son had taken which his daughter had received in the mail. He stated that on the phone Deputy Shakespear said that he would need to sign a warrant but he told him he would come down to talk with them. He testified that they were eating supper when the officer arrived. He stated that his son had been out working on a fence and had taken his 30-30 Winchester rifle with him that afternoon. He stated his son used this to shoot snakes. He stated that they called to his son who came into the room with the rifle but that he did not point it at Deputy Shakespear. He said that his son did curse but he saw Deputy Shakespear walk off the porch and get in his car, and that his son sort of. stumbled and he heard an explosion and his son said his foot slipped. He said the cussing was that his son told the deputy to “get the hell out.” He said that they thought his son had cashed his daughter’s check but found out he didn’t.
On cross-examination he testified that his son sort of stumbled as he stepped off the porch and that is when the rifle went off.
Charles Woodham a neighbor testified that he saw Johnnie Washington, Jr., *157 carrying a rifle on the afternoon of July 3, 1975, as he was working on a fence.
Johnnie Washington, Jr., testified that he had been working on a fence on his daddy’s land on July 3, 1975. He testified that he carried a 30-30 rifle with him which he used to shoot snakes. He testified that he saw Deputy Shakespear at his parents’ home some time after 6 o’clock that evening while they were at dinner. He said he went back to his room and that someone called him to come out and that he came with the gun in his hand as he was going back out to the field to see about putting up some wire. He testified that he did not aim the rifle at Deputy Shakespear. He testified that he had the gun in his hand as he went to step off the porch and that he sort of stumbled and that it went off as he jumped. He denied making any threatening gestures at the deputy with the rifle.
In rebuttal the State called Deputy Sheriff Don Harrell and Trooper Connie Fowler, each of whom testifed that they met Deputy Shakespear on the evening of July 3, 1975 after a call from him for help. Each testified they went back to the home of Johnnie Washington, Sr., and that when they called to him, he was standing in the door with a rifle in his hand and that they told him to halt and to come out and that he did so and brought the rifle with him.
I.
Appellant first contends that his motion for a directed verdict should have been granted inasmuch as the State failed to prove that the officer was actively engaged in his official duties as required by Title 14, Section 374(20), Code of Alabama, as amended 1967. It is clear from the testimony of the parties that Deputy Shakespear went to the Washington home in response from two telephone calls complaining about Johnnie Washington, Jr. There is no question but that he was in uniform and had made an official trip to Florala enroute to the Washington home. He stated in response to questioning that he went to the Washington home “not as a fa,vor but answering a complaint.” We are of the opinion that the trial court here properly overruled the motion in question. Wright v. State, 49 Ala.App. 539, 274 So. 2d 95 and cases therein cited.
II.
On the cross-examination of Mr. Washington, Sr., the following occurred:
“Q. Right. Now, when you called and talked to John D. Shakespear, where was Johnnie Ray at that time ?
“A. He was there at the house.
“Q. Didn’t you tell him he was down at the jukejoint and you thought he was drinking up that beer? You just testified to that a minute ago, didn’t you?
“A. Well, yeah. Well I did but, he had his own money.
“Q. But, at the time you thought he had cashed your daughter’s check ?
“A. Yeah, I did. I did, but he didn’t.
“Q. Has your son had any experience with other checks like this ?
“MR. JOHNSON: We object, Your Honor.
“THE COURT: Yes, sustained.
“MR. JOHNSON: And Your Honor, we’re going to move for a mistrial. That interjects prejudice into this case that can’t be erased.
“THE COURT: Deny the motion for a mistrial. The jury is instructed to disregard the District Attorney’s question.”
The rule covering this has been stated by our Supreme Court in Shadle v. State, 280 Ala. 379, 194 So.2d 538:
“. . . [I]t is well recognized that the granting of a mistrial is within the *158 sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury’s ability to decide the defendant’s fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion. ...”
In light of the prompt action of the trial judge who instructed the jury to disregard the District Attorney’s question, which, in fact, had not been answered, we are of the opinion that any possible prejudicial affect was removed and the trial court’s ruling in this respect was correct. Poellnitz v. State, 48 Ala.App. 144, 262 So.2d 631, and authorities there cited.
We have carefully examined this record and find no error therein. The judgment of the trial court is due to be and same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur.

. Title 14, Section 374(20) Code of Alabama 3940, as amended 1967.