This is an appeal from the appellant's third conviction for manslaughter. In 1988, the appellant was indicted for the murder of Robert DeGarcia and was convicted of the lesser included offense of manslaughter. That conviction was reversed on appeal because the trial court failed to give the appellant's written requested jury charges dealing with justification and self-defense. Quinlivan v. State,555 So.2d 802 (Ala.Cr.App. 1989). In 1990, the appellant was retried and again convicted. His second conviction was reversed on appeal due to the improper rebuttal closing argument by the prosecutor. Quinlivan v. State, 579 So.2d 1386 (Ala.Cr.App.), cert. quashed, 596 So.2d 658 (Ala. 1991).
In 1991, the appellant was tried a third time, was again convicted of manslaughter, and was sentenced to ten years' imprisonment. The sentence was split, with three years to serve in a jail-like facility and seven years on probation. On this appeal, the appellant raises seven issues.
This court summarized the facts presented at the appellant's first trial, which are not materially different from those established at the third trial, in Quinlivan v. State, 555 So.2d at 803-04. This appeal is based solely upon the facts and evidence presented at the appellant's third trial. See Ex parteCade, 521 So.2d 85, 86-88 (Ala. 1987), cert. denied,488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988).
 I
The appellant contends that the trial court erred by informing the jury that he had been tried twice before. The court gave the jury this information during voir dire examination, in the context of inquiring whether any member of the venire had been a member of the grand jury that had indicted the appellant, or a member of either petit jury before which the appellant had been previously tried.
A trial judge has the duty to ascertain whether jurors possess the qualifications required by law, Ala. Code 1975, § 12-16-6, and it is imperative that the trial judge perform this duty. "The grand juror, who has indicted the accused, is excluded by the common law, though he hears only the evidence for the State." Smith v. State, 55 Ala. 1, 9 (1876). "Jurors who were members of a former jury, to whom the cause had been submitted . . . are not competent jurors upon a subsequent trial of the cause; they are not *Page 1084 
impartial — free from the bias of formed opinions." Dothard v.Denson, 72 Ala. 541, 543 (1882). See also Head v. State,377 So.2d 160 (Ala.Cr.App.), cert. denied, 377 So.2d 161 (Ala. 1979).
The trial court correctly inquired whether any member of the venire had served on the grand jury or either of the appellant's two previous petit juries. Any possible prejudice to the appellant arising from this inquiry was eradicated by the following charge to the jury at the conclusion of the evidence:
 "The second thing I want to say to you, and it has been alluded to in the voir dire proceedings and other statements made to you, this defendant has been tried on two previous occasions. Under no circumstances, ladies and gentlemen, should you consider the indictment, as I have told you, as being evidence against him; under no circumstances, ladies and gentlemen, in the course of your deliberations should you consider the fact that this defendant has been placed on trial on two previous occasions. That is absolutely not for your consideration, and if you were to deliberate with that in mind, it would be in the nature of disparaging the oath which you have taken." R. 408-09 (emphasis added).
 II
The appellant argues that the trial court erred by excluding evidence that the deceased feloniously possessed a shotgun in violation of federal law. He claims that the evidence tended to show that the deceased was the aggressor during the fatal encounter.
The appellant offered to prove that the deceased had eleven prior convictions for forgery and that he was on probation for a federal conviction, was a fugitive from probationary supervision, was using an alias at the time of his death, and was aware that possession of a firearm was a violation of his probation. The court rejected this offer of proof on the ground that the proposed evidence was irrelevant.
Once there is evidence of self-defense in a homicide prosecution, the accused is entitled to prove that the deceased was a violent and bloodthirsty person, as tending to show that the deceased was the aggressor. White v. State, 294 Ala. 265,273, 314 So.2d 857, 864, cert. denied, 423 U.S. 951,96 S.Ct. 373, 46 L.Ed.2d 288 (1975); C. Gamble, McElroy's AlabamaEvidence § 33.01 (4th ed. 1991). Alabama follows the rule that the deceased's violent nature may be proved only by evidence of reputation and not by specific acts. Stokley v. State, 254 Ala. 534,543, 49 So.2d 284, 292 (1950)("Even if it be conceded that, under the evidence, the defendant was entitled to show that the character of the deceased was that of a violent, turbulent and bloodthirsty man, an inquiry of this character must relate to reputation. It is not permissible to show specific acts of conduct."); Tate v. State, 337 So.2d 13, 20
(Ala.Cr.App. 1976) (same).
Dean Wigmore criticized this approach and maintained that
 "[w]hen a character trait of the victim of a crime is relevant, there is no substantial reason against evidencing the character by particular instances of the victim's conduct. Such instances may be very significant; their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character have here little or no force. Thus, for example, when the turbulent character of the deceased is relevant in a criminal prosecution for homicide, particular instances of violent or quarrelsome conduct by the victim should be admissible."
2 Wigmore, Evidence § 63.1 at 1382 (Tillers rev. 1983).
We are not at liberty to change the rule of Alabama evidence that prohibits proof of specific acts by the deceased, seeJackson v. State, 423 So.2d 320, 321-22 (Ala.Cr.App. 1982), but even if we were inclined to adopt the Wigmore approach, we would not find that the deceased's illegal possession of a shotgun had any bearing on this case. Even the Wigmore approach requires the particular act to be relevant to the facts at issue.
In this case, a loaded shotgun belonging to the victim was found leaning against a wall at the scene of the homicide. It was undisputed that the shotgun had not been *Page 1085 
fired, aimed, or handled during the events in question here. The appellant claimed that he acted in self-defense when the deceased drew a knife on him. These facts are discernibly different from the facts of Poellnitz v. State, 48 Ala. App. 144, 262 So.2d 631 (1972), a case cited by the appellant for the proposition that his offer of proof was relevant because it "tended to show under what circumstances the deceased carried a pistol." Id. at 148, 262 So.2d at 635.
In Poellnitz, the accused claimed that he fired at the deceased, who had a rifle "hanging in his hand . . . to prevent the deceased from shooting him." Id. at 146, 262 So.2d at 633. The accused also presented testimony that the deceased had been seen with a pistol on prior occasions. In rebuttal, the prosecution was allowed to introduce evidence that the deceased was a deputy sheriff authorized to carry a firearm. ThePoellnitz court approved the admission of the State's rebuttal evidence, explaining that
 "[w]here, as here, the defendant had introduced testimony that the deceased had, on several occasions, been seen with a pistol, we feel Deputy Garner's testimony to be relevant in that it tended to show under what circumstances the deceased carried a pistol. Without the benefit of this testimony, the jury might have been misled into believing that the deceased went about armed with a pistol for some reason other than the fact that he was a law enforcement officer. The jury was entitled to have before it this evidence to put the matter in its true light."
Poellnitz v. State, 48 Ala. App. at 148, 262 So.2d at 635.
What made the deceased's possession of a firearm relevant inPoellnitz was the accused's claim that the deceased had been armed with a gun during the fatal encounter. No such claim was made here. Compare Lemley v. State, 599 So.2d 64, 75
(Ala.Cr.App. 1992) ("[i]f the force which arguably justified the appellant's right of self-defense was "unlawful" in this case, it was not because the weapon was prohibited by ordinance, but because the weapon was aimed at the appellant"). The evidence in this case established that the victim's shotgun played no part in the events leading up to this homicide. Therefore, the trial court correctly determined that the victim's possession of the firearm, even if felonious, was irrelevant to the appellant's claim of self-defense.
 III During the altercation, the appellant fired six shots. Expert testimony established that the deceased suffered six gunshot wounds made by five bullets. Three bullets were removed from the victim's body, two bullets passed through a mirror in back of a bar in the room where the victim was shot, and the remaining bullet was never found. The appellant's defense was that he fired all six shots in rapid succession after the victim threatened him with a knife.
During his investigation at the scene of the homicide, Mobile Police Sergeant Donald Leeth observed that a bullet hole in the top of the bar appeared to align with one of the bullet holes in the mirror behind the bar. Leeth ran a string through the two bullet holes, extended the string to the opposite side of the room, and photographed the length of string.
The appellant claims that the court erroneously allowed this photographic evidence because it depicted a demonstration or test the premise of which (that the same bullet made both holes) was speculative and unreliable. We hold that the admission of the photographic evidence of the demonstration, even if speculative and unreliable, was harmless to the appellant.
The prosecution's case did not rise or fall on the premise that a single bullet made both holes, and that theory was presented as nothing more than a hypothesis. Sgt. Leeth readily conceded that the bullet that passed through the top of the bar might not have been the same bullet that passed through the mirror. R. 309.
Furthermore, the one-bullet theory was not in conflict with the appellant's version of the facts. Sgt. Leeth admitted that he did not know from which point along the path of the string the shots were fired, R. 309, so that neither his testimony nor the photographs *Page 1086 
necessarily undermined the appellant's claim of self-defense.
As depictions of a theory illustrating the trajectory of the bullets, the string photographs were admissible. In Ivey v.State, 369 So.2d 1276 (Ala.Cr.App.), cert. denied,369 So.2d 1281 (Ala. 1979), this Court observed that testimony about the " 'path of flight' or trajectory of the bullet," is unobjectionable. 369 So.2d at 1280 (on rehearing) (quotingWilbanks v. State, 42 Ala. App. 39, 151 So.2d 741 (1962), cert. denied, 275 Ala. 701, 151 So.2d 744 (1963)). We also noted inIvey that evidence "about the direction from which the bullet was fired" is admissible Id. See also Pruitt v. State, 232 Ala. 421,168 So. 149 (1936), wherein the Alabama Supreme Court observed the following:
 "There was no error in allowing th[e] witness to further testify that he placed a pencil in the bullet hole to see the direction it entered the car and that the range of the bullet seemed going on the level of the corner, according to the way the hole was through the car."
Pruitt, 232 Ala. at 423, 168 So. at 151.
Because neither the photographs nor Sgt. Leeth's testimony undermined the appellant's theory of self-defense, the "string test," even if speculative, was not prejudicial to the appellant.
 IV
The appellant maintains that the trial court erroneously admitted his statement without a voluntariness predicate. He insists that at the time he made the statement he was suffering from mental and emotional impairment that rendered his statement involuntary.
The appellant's statement was not made to a law enforcement officer. It was given in response to questioning by Tom Haas, an experienced criminal lawyer and the appellant's close personal friend. The appellant's typewritten statement was prepared in Haas's law office on the morning after the shooting of Robert DeGarcia. Five lawyers were present: the appellant, Tom Haas, his daughter Ruthie Haas, Hal Bailey, and Barry Hess. After the statement had been typed, attorneys Tom Haas and Barry Hess delivered it to officers in the homicide division of the Mobile Police Department. R. 317.
A statement is constitutionally involuntary only if it is the product of coercion by government agents. Colorado v. Connelly,479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A statement prompted by a mental or emotional disturbance that prevents the exercise of free will but is not the result of official coercion is "voluntary" within the meaning of the Due Process Clause of the United States Constitution. Id.
Because the appellant's statement was not prompted by any action on the part of law enforcement agents, it was constitutionally voluntary, and the trial court did not err by failing to require a "voluntariness predicate." The appellant's emotional condition may have made the statement "unreliable," but it did not make it "involuntary."
 "[T]he Constitution rightly leaves [the unreliability] inquiry to be resolved by state laws governing the admission of evidence and erects no standard of its own in this area. A statement rendered by one [who is emotionally disturbed] might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum, . . . and not by the Due Process Clause of the Fourteenth Amendment."
Colorado v. Connelly, 479 U.S. at 167, 107 S.Ct. at 521-22;Whittlesey v. State, 586 So.2d 31, 34 (Ala.Cr.App. 1991) (Bowen, J., concurring in result). As I pointed out inWhittlesey, supra, "[s]o far as I know, the appellate courts of Alabama have not, since Connelly, determined whether a confession made by one who is [emotionally disturbed] is inadmissible under Alabama law alone." 586 So.2d at 34 (emphasis in original). It is unnecessary to resolve that issue here since the appellant did not raise it below.
 V
The appellant claims that the evidence was insufficient because the prosecution did not disprove that he acted in self-defense.
The evidence at the appellant's third trial did not differ in any material respect from *Page 1087 
the evidence presented at either of his first two trials. On his two prior appeals, this Court has implicitly reviewed and upheld the sufficiency of the evidence of manslaughter. Each prior appeal resulted in a reversal and remand for a new trial because of trial error. The sufficiency of the evidence was an issue preserved, raised, and argued in brief on both of the prior appeals. Had the evidence in either prior prosecution been insufficient to support the verdict, this court would have reversed and rendered pursuant to Burks v. United States,437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
Relying only on the facts and evidence presented at the appellant's third trial, this Court finds that the prosecution established a prima facie case of manslaughter. "Where, as here, the killing was admitted, the question of whether or not it was justified under the theory of self-defense was for the jury." Townsend v. State, 402 So.2d 1097, 1098 (Ala.Cr.App. 1981). The issue of self-defense invariably presents a question for the jury, whose verdict will not be disturbed on appeal. "[E]ven if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and they may, in their discretion, accept it as true or reject it." Mack v. State,348 So.2d 524, 529 (Ala.Cr.App. 1977).
This Court's observation in Hilliard v. State, 610 So.2d 1204
(Ala.Cr.App. 1992), a recent case with similar facts, is applicable here:
 "The only evidence at trial concerning the appellant's theory of self-defense was the appellant's testimony in which he stated that he stabbed the victim only after the victim pulled a knife on him. The jury does not have to accept the accused's version of what happened.
 " 'Whether the killing of another was justified as an act of self-defense is a question for the jury, Turner v. State, 160 Ala. 40, 49 So. 828; and this is true even though the defendant's testimony as to how the difficulty occurred is uncontradicted.'
 Collier v. State, 49 Ala. App. 685, 275 So.2d 364, 367 (1973). 'The weight and credence given the testimony of the accused as to the issue of self-defense is a question for the jury.' Garraway v. State, 337 So.2d 1349, 1353 (Ala.Cr.App. 1976). See also Atchley v. State, 393 So.2d 1034, 1051
(Ala.Cr.App. 1981); Warren v. State, 380 So.2d 305, 307 (Ala.Cr.App. 1979), cert. quashed, 380 So.2d 307 (Ala. 1980); Graham v. State, 339 So.2d 110, 113 (Ala.Cr.App.), writ denied, 339 So.2d 114 (Ala. 1976).
 "The trial court in its oral instructions to the jury set forth the law on self-defense. The jury resolved the issue against the appellant by finding him guilty. . . . Th[at] verdict is supported by evidence presented at trial. The trial court committed no error in failing to grant the appellant's motion for judgment of acquittal."
Hilliard v. State, 610 So.2d at 1205.
 VI
The appellant claims that he was placed in jeopardy by his second and third trials for manslaughter. We understand his first argument to be as follows: Ala. Code 1975, § 13A-6-3
establishes two separate manslaughter offenses — subsection (a)(1) "reckless" manslaughter, and subsection (a)(2) "heat-of-passion" manslaughter. At the appellant's first and second trials, the jury was charged on both kinds of manslaughter. At the first and second trials, the jury returned a general verdict of guilt, without specifying under which subsection of the manslaughter statute it had convicted the appellant. The jury could only have convicted the appellant of one kind of manslaughter; thus, it must have acquitted him of the other kind of manslaughter. At his second and third trials, the appellant was therefore in jeopardy of being convicted of an offense for which he had already been acquitted. A.
The simple answer to this argument is that Ala. Code 1975, § 13A-6-3, does not establish two manslaughter offenses. We agree with the appellant that reckless manslaughter and sudden heat-of-passion manslaughter are "distinct and mutually exclusive aspects of manslaughter." Brief of the Appellant at 70. Subsections (a)(1) and (a)(2) *Page 1088 
constitute different ways of committing the offense prohibited in Ala. Code 1975, § 13A-6-3. See McLaughlin v. State,586 So.2d 267, 272 (Ala.Cr.App. 1991). These subsections do not, however, constitute separate offenses for purposes of jeopardy.
The appellant's argument that sudden heat-of-passion manslaughter and reckless manslaughter are separate offenses
 "rests on the erroneous assumption that any statutory alternatives are ipso facto independent elements defining independent crimes under state law. . . . In point of fact, . . . legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes. The question whether statutory alternatives constitute independent elements of the offense . . . is a substantial question of statutory construction."
Schad v. Arizona, ___ U.S. ___, ___, 111 S.Ct. 2491, 2499,115 L.Ed.2d 555 (1991) (footnote omitted).
The Alabama legislature clearly intended §§ 13A-6-3(a)(1) and -(a)(2) to be alternative ways of committing a single offense denominated "the crime of manslaughter." Section 13A-6-3
describes two alternative ways of committing the crime ofmanslaughter and it sets out a single punishment for that crime:
"(a) A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.
"(b) Manslaughter is a Class B felony."
Cf. Sisson v. State, 528 So.2d 1159, 1162 (Ala. 1988) ("Section32-5A-191(a)(1) and (2) are merely two different methods of proving the same offense — driving under the influence [of alcohol]").
The appellant argues that "[b]ecause the two aspects of manslaughter require proof of different mental states, they are mutually exclusive crimes under the general heading of manslaughter." Brief of the Appellant at 71. Schad v. Arizona, supra, provides the answer to that argument. In that case, the United States Supreme Court upheld the state court's determination that premeditated murder and felony-murder are not separate offenses; they are alternative means of satisfying the mental element of a single offense — first degree murder.Schad also answers the appellant's argument that he was entitled to know which manslaughter alternative the jury found him guilty of at his first and second trials. In Schad, the Court held that a jury need not unanimously agree on one of the alternative theories (premeditated murder or felony-murder) for a first degree murder conviction. It is sufficient that the "jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murderedeither with premeditation or in the course of committing a robbery." Schad v. Arizona, ___ U.S. at ___, 111 S.Ct. at 2496
(emphasis added).
The appellant cites Ex parte Washington, 448 So.2d 404 (Ala. 1984), for the proposition that intentional murder and reckless murder are separate offenses outlined in §§ 13A-6-2(a)(1) and -(a)(2). He then argues by analogy that reckless manslaughter and heat-of-passion manslaughter are separate offenses under subsections (a)(1) and (a)(2) of the manslaughter statute. Exparte Washington referred to the "intentional murder and reckless murder alternatives . . . contained in different subsections of § 13A-6-2." 448 So.2d at 407 (emphasis added). That case held that one alternative is not a lesser included offense of the other. It did not hold that intentional murder and reckless murder are "separate offenses" for purposes of determining whether jeopardy had attached.
By the same token, in McLaughlin v. State, supra, this Court did not hold that subsections (a)(1) and (a)(2) of the manslaughter statute constitute separate offenses for jeopardy purposes. In McLaughlin, we said that
 "[t]he offense of sudden heat of passion manslaughter identified in §§ 13A-6-2(b) *Page 1089 
and 13A-6-3(a)(2) sets out 'the law of mitigating an intentional murder to manslaughter if committed under a naturally engendering passion' . . . [while] . . . the offense of manslaughter identified in § 13A-6-3(a)(1) describes a reckless homicide."
586 So.2d at 272 (original emphasis deleted, present emphasis added). We should not have used the term "offense" to draw a distinction in McLaughlin between the two ways of committing the crime of manslaughter. Instead, it would have been more precise to employ the term "variant" or "alternative" to describe the two different ways in which the single offense of manslaughter set out in § 13A-6-3 can be violated. The fact that we used imprecise language in another context, however, does not convert two different types of conduct, either of which the legislature intended to constitute the single crime of manslaughter, into separate "offenses" for purposes of jeopardy here.
To paraphrase the United States Supreme Court,
 "[the appellant's] real challenge is to [Alabama's] characterization of [manslaughter] as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that [reckless manslaughter] and [heat-of-passion manslaughter] are separate crimes as to which the jury must return separate verdicts. The issue in this case, then, is one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions. . . ."
Schad v. Arizona, ___ U.S. at ___, 111 S.Ct. at 2496. There is no question here that the Alabama legislature was acting within permissible limits in defining the offense of manslaughter in terms of alternative, and mutually exclusive, mental states. Mutually exclusive mental states have always characterized the crime of manslaughter in Alabama. Even prior to the adoption of the Alabama Criminal Code in 1979, either a reckless killing,Garrett v. State, 268 Ala. 299, 105 So.2d 541 (1958), or a killing in sudden passion with sufficient provocation, Easleyv. State, 246 Ala. 359, 20 So.2d 519 (1945), constituted manslaughter. Alabama appellate courts have long held that
 "Intent to kill is but an alternative ingredient [of manslaughter]: the same state of mind can be imputed from conduct wanton and reckless toward human life. The likelihood of another's being imperiled by the wanton conduct, no less than actual knowledge, makes for culpability, thus supplying mens rea in voluntary manslaughter."
Anderson v. State, 40 Ala. App. 509, 513, 120 So.2d 397, 400
(1959), cert. denied, 270 Ala. 575, 120 So.2d 414 (1960), reversed on other grounds, 366 U.S. 208, 81 S.Ct. 1050,6 L.Ed.2d 233 (1961).
 B.
The appellant also argues that his right not to be placed in jeopardy twice for the same offense was violated by the trial court's finding, after the second trial, that the appellant had been convicted, at that trial, of heat-of-passion manslaughter. Citing Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170,57 L.Ed.2d 43 (1978), he contends that the court's determination that he had been convicted of heat-of-passion manslaughter "had the instantaneous effect, because of double jeopardy, of acquitting the appellant of reckless manslaughter." Brief of the Appellant at 76.
First of all, it is incorrect to state that the appellant was ever acquitted of manslaughter. The jury was not required to specify under which manslaughter alternative it found the appellant guilty. At either or both of the first two trials, some jurors may have determined that the appellant committed reckless manslaughter and other jurors may have found that he committed heat-of-passion manslaughter, but all jurors agreed that the appellant committed the crime of manslaughter. AsSchad v. Arizona makes clear, that is the only verdict unanimity required under the circumstances.
Moreover, even if the verdict in the second trial could be construed as an acquittal of reckless manslaughter, the appellant was not thereafter placed in jeopardy of a conviction for reckless manslaughter. The jury at the appellant's third trial was instructed only on heat-of-passion manslaughter. *Page 1090 
 VII
There was no error in sentencing the appellant under the firearm enhancement statute. The jury verdict of guilt necessarily determined that the appellant engaged in intentional conduct. A heat-of-passion killing is anintentional homicide mitigated from murder to manslaughter "if committed under a naturally engendering passion." Ala. Code 1975, § 13A-6-2(b), Commentary at 151. The appellant's conviction rests on "a degree of culpability higher than that for which [the accused in McCree] had been found guilty." SeeEx parte McCree, 554 So.2d 336, 341 (Ala. 1988); Mays v. State,607 So.2d 347 (Ala.Cr.App. 1992); Woods v. State,602 So.2d 1210 (Ala.Cr.App. 1992).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.