The petitioner, Spencer Owen Ziglar, filed this petition for a writ of mandamus, asking us to direct the Honorable Robert W. Barr, circuit judge for the Twelfth Judicial Circuit, not to retry the criminal case against him. He contends that to retry him for manslaughter would subject him to double jeopardy. *Page 544 
The petitioner was initially indicted for murder, a violation of § 13A-6-2, Code of Alabama 1975, but was convicted of the lesser included offense of manslaughter, a violation of §13A-6-3, Code of Alabama 1975. We reversed that conviction because the petitioner's wife had been compelled to testify against him in violation of the spousal privilege. Ziglar v.State, 629 So.2d 43 (Ala.Cr.App. 1993). The petitioner's retrial, on the charge of manslaughter, was scheduled to begin in November 1994. The petitioner then filed with this court a petition for a writ of mandamus arguing that a retrial would subject him to double jeopardy. We denied the petition without an opinion, on the authority of Ex parte Spears, 621 So.2d 1255
(Ala. 1993). Ex parte Ziglar, 668 So.2d 936 (Ala.Cr.App. 1994) (table). On the same day this court denied his petition, Ziglar filed a petition for a writ of mandamus in the Alabama Supreme Court. Before the Alabama Supreme Court ruled on the petition, the second trial ended in a mistrial when the jury was unable to reach a unanimous verdict. Ziglar then filed a second petition for a writ of mandamus in the Alabama Supreme Court, asking that Court to bar any further retrials. The Supreme Court denied that petition, stating that it was premature because he did not present with his petition any evidence that he had raised in the trial court the issue of double jeopardy.Ex parte Ziglar, 669 So.2d 133 (Ala. 1995). In response, the petitioner filed a motion to dismiss in the trial court. A hearing was held on the petitioner's motion, and the motion was denied by the trial court. The petitioner then filed this petition for a writ of mandamus with this court.
Initially, we must determine if a petition for a writ of mandamus is the appropriate method to challenge a pretrial ruling on a motion to dismiss based on double jeopardy grounds. The Alabama Supreme Court addressed this issue in its opinion in this case. The Alabama Supreme Court stated:
 "We are satisfied that a criminal defendant with a double jeopardy defense should not be foreclosed from pretrial correction of a trial judge's erroneous denial of a plea of former jeopardy. Therefore, the appellate courts of this State will review double jeopardy claims properly presented by petitions for the writ of mandamus. Rule 21(e), Ala.R.App.P. This procedure will adequately protect the interest of a defendant, as emphasized in Abney [v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)], so as to avoid the personal strain, public embarrassment, and expense of a subsequent criminal trial."
669 So.2d at 135. Thus, a petition for a writ of mandamus is a viable method by which to challenge a trial court's ruling on a motion to dismiss based on double jeopardy grounds.
The petitioner contends that the doctrine of double jeopardy and/or the doctrine of collateral estoppel bar his third trial on a charge of manslaughter.
The Code section defining manslaughter, § 13A-6-3, Code of Alabama 1975, establishes two separate manslaughter offenses: subsection (a)(1) defines "reckless" manslaughter; and subsection (a)(2) defines "heat-of-passion" manslaughter. The petitioner contends that in his first trial, the jury was given, in addition to instructions on murder, instructions on heat-of-passion manslaughter, § 13A-6-3(a)(2), but was not instructed as to reckless manslaughter, § 13A-6-3(a)(1), because, he says, the trial court found that no evidence was presented to support a charge of reckless manslaughter. The petitioner claims that he was therefore acquitted of reckless manslaughter. Likewise, in his second trial, the petitioner contends that the jury was given instructions only on reckless manslaughter because the trial court refused to instruct on heat-of-passion manslaughter and he argues that he was therefore likewise acquitted of heat-of-passion manslaughter in his second trial.
The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This right is echoed in Article I, § 9, of the Constitution of Alabama of 1901, which states:
 "That no person shall, for the same offense, be twice put in jeopardy of life or limb; but courts may, for reasons fixed by *Page 545 
law, discharge juries from the consideration of any case, and no person shall gain an advantage by reason of such discharge of the jury."
The petitioner was acquitted of the charge of murder when he was convicted of manslaughter in his first trial. The conviction for a lesser included offense is an implied acquittal as to the greater offense. Jeffers v. United States,432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). The fact that the petitioner's first conviction of manslaughter, was reversed by the court does not prevent the State from trying him again on charges of manslaughter or any lesser offense of manslaughter. "The Double Jeopardy Clause does not preclude the State's retrying a defendant whose conviction is set aside because of an error in the proceedings." Ex parte Roberts,662 So.2d 229, 232 (Ala. 1995). Also, a mistrial due to a deadlocked jury in the second trial does not preclude petitioner's retrial on manslaughter.
 "A mistrial, declared after a trial judge has determined that the jury cannot agree upon a verdict, does not terminate the original jeopardy to which the defendant was subjected. Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Thus, a defendant's retrial following a hung jury does not constitute double jeopardy under the Alabama or United States Constitutions."
McKinney v. State, 567 So.2d 870, 874 (Ala.Cr.App.), cert. denied, 567 So.2d 877 (Ala. 1990). See also Article I, § 9, Alabama Constitution of 1901.
The petitioner's contention that he was subjected to double jeopardy because of the trial court's refusal to give instructions on a particular type of manslaughter in each of his two previous trials and that the trial court's refusal to do so resulted in an acquittal as to those offenses is not supported by prior case law. Although there are two distinct and mutually exclusive types of manslaughter, "[t]hese subsections do not . . . constitute separate offenses for purposes of jeopardy." Quinlivan v. State, 627 So.2d 1082, 1088
(Ala.Cr.App. 1992).
 "The appellant cites Ex parte Washington, 448 So.2d 404 (Ala. 1984), for the proposition that intentional murder and reckless murder are separate offenses outlined in §§ 13A-6-2(a)(1) and -(a)(2). He then argues by analogy that reckless manslaughter and heat-of-passion manslaughter are separate offenses under subsections (a)(1) and (a)(2) of the manslaughter statute. Ex parte Washington referred to the 'intentional murder and reckless murder alternatives . . . contained in different subsections of § 13A-6-2.' 448 So.2d at 407 (emphasis added). That case held that one alternative is not a lesser included offense of the other. It did not hold that intentional murder and reckless murder are 'separate offenses' for purposes of determining whether jeopardy had attached.
 "By the same token, in McLaughlin v. State, [586 So.2d 267 (Ala.Cr.App. 1991)] this Court did not hold that subsections (a)(1) and (a)(2) of the manslaughter statute constitute separate offenses for jeopardy purposes. In McLaughlin, we said that
 " '[t]he offense of sudden heat-of-passion manslaughter identified in §§ 13A-6-2(b) and 13A-6-3(a)(2) sets out "the law of mitigating an intentional murder to manslaughter if committed under a naturally engendering passion" . . . [while] . . . the offense of manslaughter identified in § 13A-6-3(a)(1) describes a reckless homicide.'
 "586 So.2d at 272 (original emphasis deleted, present emphasis added [in Quinlivan]). We should not have used the term 'offense' to draw a distinction in McLaughlin between the two ways of committing the crime of manslaughter. Instead, it would have been more precise to employ the term 'variant' or 'alternative' to describe the two different ways in which the single offense of manslaughter set out in § 13A-6-3 can be violated. The fact that we used imprecise language in another context, however, does not convert two different types of conduct, either of which the legislature intended to constitute the single crime of manslaughter, into separate 'offenses' for purposes of jeopardy here.
"To paraphrase the United States Supreme Court, *Page 546 
 " '[the appellant's] real challenge is to [Alabama's] characterization of [manslaughter] as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that [reckless manslaughter] and [heat-of-passion manslaughter] are separate crimes as to which the jury must return separate verdicts. The issue in this case, then, is one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions. . . .'
 "Schad v. Arizona, 501 U.S. [624] at 630-31, 111 S.Ct. [2491] at 2496[, 115 L.Ed.2d 555 (1991)]. There is no question here that the Alabama legislature was acting within permissible limits in defining the offense of manslaughter in terms of alternative, and mutually exclusive, mental states. Mutually exclusive mental states have always characterized the crime of manslaughter in Alabama. Even prior to the adoption of the Alabama Criminal Code in 1979, either a reckless killing, Garrett v. State, 268 Ala. 299, 105 So.2d 541 (1958), or a killing in sudden passion with sufficient provocation, Easley v. State, 246 Ala. 359, 20 So.2d 519 (1945), constituted manslaughter. Alabama appellate courts have long held that
 " 'Intent to kill is but an alternative ingredient [of manslaughter]: the same state of mind can be imputed from conduct wanton and reckless toward human life. The likelihood of another's being imperiled by the wanton conduct, no less than actual knowledge, makes for culpability, thus supplying mens rea in voluntary manslaughter.'
 "Anderson v. State, 40 Ala. App. 509, 513, 120 So.2d 397, 400 (1959), cert. denied, 270 Ala. 575, 120 So.2d 414 (1960), reversed on other grounds, 366 U.S. 208, 81 S.Ct. 1050, 6 L.Ed.2d 233 (1961)."
627 So.2d at 1088-89.
The petitioner's contention that the doctrine of collateral estoppel should prevent his trial on charges of criminally negligent homicide or retrial on charges of manslaughter is also unfounded.
 "The doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy . . . [and] . . . provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."
United States v. Bailey, 34 F.3d 683, 688 (8th Cir. 1994). There has been no final judgment of an issue of ultimate fact regarding the manslaughter charge because the first conviction was reversed and the second trial resulted in a hung jury.
The petitioner has made no showing that the doctrine of double jeopardy or the doctrine of collateral estoppel should be applied to prevent the state from retrying him for manslaughter. Therefore, the appellant's petition for a writ of mandamus is due to be denied.
PETITION DENIED.
All the Judges concur.