Ethan Dorsey was convicted of the felony murders of Richard Cary and Scott Williams and of robbery. With regard to each of those convictions, the trial court sentenced Dorsey to life imprisonment; the sentences were to run consecutively. Dorsey was also convicted of the capital offense of murdering Timothy Bryan Crane, a 13-year-old. See § 13A-5-40(a)(15), Ala. Code 1975. The jury, by a vote of 11 to 1, recommended that on the capital conviction Dorsey be sentenced to life imprisonment without the possibility of parole. The trial court chose not to follow the jury's advisory verdict, and sentenced Dorsey to death. See §13A-5-47, Ala. Code 1975. Dorsey appealed.
The Court of Criminal Appeals "remanded [this case] to the [c]ircuit [c]ourt . . . for that court to vacate Dorsey's conviction and sentence for robbery, . . . and for the trial court to correct its sentencing order [relating to the capital conviction] to state the nonstatutory mitigating circumstances that it found to exist and to state the reasons why [it] gave the jury's recommendation the consideration that [it] did." Dorseyv. State, 881 So.2d 460, 523 (Ala.Crim.App. 2001) ("DorseyI"). The Court of Criminal Appeals stated the following facts:
 "The State's evidence tended to show the following: On November 20, 1996, Brad Cary discovered the bodies of his father Richard Cary, Scott Williams, and Timothy Crane at Cary's Grocery store in Brooklyn, Alabama. All three had been shot. An autopsy revealed that Cary died of a shotgun wound to the left side of his chest; Williams died of a .25 caliber gunshot wound to his head; and Crane died of a .22 or .25 caliber gunshot wound to his head. Approximately $300 and a .357 revolver were missing from the store.
 "Dorsey's codefendant, Calvin Middleton, testified concerning the events of November 20, 1996. He said that he and Dorsey had planned to rob a grocery store in Brooklyn. Dorsey got two guns, sweaters, and gloves from his house. The two parked a rented Dodge Acclaim automobile near an abandoned house east of the store, put on hoods and gloves, and walked to the store. Dorsey was armed with a revolver and Middleton was carrying a shotgun. The two entered the store with their guns drawn. Cary was behind the counter, Williams was at the end of the counter close to the back [of the store], and Crane was leaning on the counter near the front door. Middleton thought that Cary was looking for a gun so he told Cary to walk outside. He then told Cary to get on the ground. Cary tried to grab the gun and Middleton shot him in the chest. Middleton testified that he then ran to the car because he got scared. As he was running, he said, he heard two more shots. Dorsey joined him at the car. Middleton stated that Dorsey told him that he had shot the man and boy because the boy started to run. The two then drove to Yolanda Nelson's house in Boykin. Dorsey and Middleton eventually ended up at a nightclub in Opp, where they saw Rodney Brooks.
 "Brooks corroborated Middleton's testimony. He said that on November 20, 1996, he was riding around with Dorsey and Middleton when Dorsey said that he *Page 535 
and Middleton were going to `hit a store' in Brooklyn. He testified that they stopped at Dorsey's house, Dorsey went into the house, and came out carrying a small caliber revolver and a duffel bag. He said that Dorsey asked him if he wanted to accompany them to `hit' the store in Brooklyn. Brooks declined and asked that he be dropped off at 8th Avenue in Andalusia. Brooks also testified that he saw the two at a nightclub in Opp later that same night. He said that Middleton told him that he and Dorsey had `pulled some 187s' when they had hit the store in Brooklyn. He said that this was a slang expression, meaning that they had killed some people.
 "Brad Cary testified that on November 20, 1996, he was with his mother in their home directly across from Cary's store when he heard several gunshots. He thought that his father, Richard Cary, was shooting at animals. Several moments later he went to the store and saw his father's body. Brad Cary testified that he thought that his father, an avid practical joker, was playing a joke on him so he went back to the house, retrieved a gun, and fired a shot into the air. Brad testified that he then realized that his father and the others had been shot and went for help.
 "While confined in the Escambia County jail, Dorsey told a fellow inmate, Windell Jordan, that Middleton and he had been involved in a robbery that had `gone bad,' and that he had shot a boy and that Middleton had shot one of the men with a shotgun.
 "A search of the area near the store revealed a twenty-dollar bill and a five-dollar bill in the grass near the pavement off County Road6 — an area consistent with where Middleton said he and Dorsey had parked the car. Two days after the murders a .357 revolver was found about 150 yards from the scene of the robbery-murders in the grass near County Road 6.
 "Dorsey's defense was that he did not commit the robbery-murders. He attempted to place the blame on Brad Cary."
Dorsey I, 881 So.2d at 471-72.
In Dorsey I, the Court of Criminal Appeals concluded that "Dorsey's convictions for two counts of felony murder for the murders of Cary and Williams [were] valid convictions and [were] not affected by [its] decision." 881 So.2d at 513. On return to remand, the Court of Criminal Appeals affirmed Dorsey's capital-murder conviction and his sentence of death. Dorsey v.State, 881 So.2d 460, 523 (Ala.Crim.App. 2001) (opinion on return to remand). Dorsey filed an application for rehearing, which the Court of Criminal Appeals overruled on April 19, 2002, without an opinion. Dorsey petitioned this Court for certiorari review, which we granted on October 28, 2002. We affirm the judgment of the Court of Criminal Appeals insofar as it affirmed Dorsey's felony-murder convictions. However, we reverse its judgment insofar as it affirmed Dorsey's capital-murder conviction and remand for further proceedings consistent with this opinion.
 I.
A three-count indictment was returned against Dorsey on March 12, 1997. Section 13A-5-40(a)(2), Ala. Code 1975, provides that "[m]urder by the defendant during a robbery in the first degree" is a capital offense. Count 1 of the indictment charged Dorsey under this subsection with the capital murders of Richard Cary, Scott Williams, and Timothy Bryan Crane.
Section 13A-5-40(a)(10), Ala. Code 1975, provides that "[m]urder wherein two or *Page 536 
more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct" is a capital offense. Count 2 of the indictment charged Dorsey under this subsection with the capital murders of Richard Cary, Scott Williams, and Timothy Bryan Crane.
Section 13A-5-40(a)(15), Ala. Code 1975, provides that "[m]urder when the victim is less than fourteen years of age" is a capital offense. Count 3 of the indictment charged Dorsey under this subsection with the capital murder of Timothy Bryan Crane, who was 13 years of age.[1]
"[T]he terms `murder' and `murder by the defendant' as used in this section [§ 13A-5-40] to define capital offenses mean murder as defined in Section 13A-6-2(a)(1)." § 13A-5-40(b), Ala. Code 1975. Section 13A-6-2(a)(1) provides that "[a] person commits the crime of murder if . . . [w]ith intent to cause the death ofanother person, he causes the death of that person or of another person." (Emphasis added.)
 II.
At the conclusion of the guilt phase of Dorsey's trial, the trial court instructed the jury on the capital offenses charged in the indictment, as well as certain lesser non-capital offenses included within the capital offenses:
 "With respect to Count One, the trial court instructed the jury on the capital offense of intentional murder during the course of a robbery. The court also instructed the jury on the lesser-included, non-capital offenses of intentional murder, felony murder, and robbery in the first degree. Each of the murder charges was potentially applicable to each murder victim: Cary, Williams, and/or Crane.
 "As for Count Two, the trial court instructed the jury on the intentional murder of two or more persons by one act or pursuant to one scheme or course of conduct — a capital offense. The court also instructed the jury on two lesser-included, non-capital offenses: (1) the intentional murder of Cary, Williams, and/or Crane; and (2) the felony murder of Cary, Williams, and/or Crane.
 "Finally, as to Count Three, the court instructed the jury on the intentional murder of a victim less than fourteen years of age (Timothy Crane) — again, a capital offense. The court instructed the jury that it could also find Dorsey guilty of the lesser-included, non-capital offense of felony murder of Timothy Crane."
State's brief, at 13-14 (citations to reporter's transcript omitted).
Unlike capital murder and intentional murder, as defined in §13A-6-2(a)(1), the crime of "[f]elony murder requires no intent to kill, but only the intent to commit the underlying felony."Dorsey I, 881 So.2d at 511. Under § 13A-6-2(a)(3), Ala. Code 1975, "[a] person commits the crime of [felony] murder if . . . [h]e commits . . . robbery in any degree, . . . and, in the course of and in furtherance of the crime . . . or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person."
The jury returned verdicts convicting Dorsey of the felony murder of Cary under count 1, the felony murder of Williams under count 2, and the capital murder of Crane under count 3. At this point, concerned that the verdicts were inconsistent and/or incomplete, the trial court decided to reinstruct the jury with *Page 537 
respect only to some of the charges embraced within count 1. While the Court of Criminal Appeals concluded that the trial court accepted the verdict on count 3 before it reinstructed the jury, thereby convicting Dorsey of the capital murder of Crane, it is clear that the trial court did not accept that verdict. In response to an inquiry from the State, the trial judge explained his position with regard to the acceptance of the verdict on count 3: "I decided, at this point, that I [will] wait and not make a ruling on that issue until I get the jury to return any verdicts they arrive at after I recharge." Indeed, the trial court later stated: "I have not accepted any of the verdicts."
When the trial court reinstructed the jury with regard to Cary and Williams, it limited its instructions to the lesser-included offenses of felony murder and first-degree robbery. However, with respect to Crane, the trial court charged the jury with regard toboth intentional murder and felony murder.
After it deliberated a second time, the jury returned verdicts convicting Dorsey of the felony murders of Cary, Williams, and
Crane, as well as robbery in the first degree. Dorsey's counsel urged the trial court to accept those verdicts. However, those verdicts did not end the trial. Instead, the trial court decided to instruct the jury a third time regarding the charge that Dorsey had intentionally murdered Crane.
In its third instructions, the trial court stated, in part:
 "I would like for you to go back to the jury room, deliberate and come back and tell me this one question: Do you find the defendant guilty of intentional murder of Timothy Bryan Crane under Count 1 of the indictment, do you find the defendant guilty of felony murder of Timothy Bryan Crane under Count 1 of the indictment or do you find the defendant not guilty of any murder at all of Timothy Bryan Crane under Count 1 of the indictment?"
The trial court later told the jury "to go back, deliberate and tell me whether or not you find the State has proved, beyond a reasonable doubt, that the defendant intentionally killed Timothy Bryan Crane." The jury then returned, stating its "finding [of intentional murder] with regard to the death of Timothy Bryan Crane."
The trial court ultimately accepted verdicts convicting Dorsey of the felony murder of Cary, the felony murder of Williams, robbery, and the capital murder of Crane as charged in count 3 of the indictment.
 III.
In Dorsey I, the Court of Criminal Appeals correctly stated that "a verdict of felony murder and a verdict of capital murder for the murder of the same victim are legally inconsistent,"881 So.2d at 511, explaining:
 "Alabama law requires that, before an accused can be convicted of capital murder, he must have a specific intent to kill. Smith v. State, 745 So.2d 922
(Ala.Crim.App. 1999). . . . [T]his specific intent to kill cannot be supplied by the felony-murder doctrine. Travis v. State, 776 So.2d 819
(Ala.Crim.App. 1998), aff'd, 776 So.2d 874 (Ala. 2000), cert. denied, 531 U.S. 1081, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). Felony murder requires no intent to kill, but only the intent to commit the underlying felony. Mitchell v. State, 706 So.2d 787
(Ala.Crim.App. 1997). Alabama's capital murder statute, § 13A-5-40, requires a specific intent to kill that is not necessary to convict for felony murder. One murder cannot be both unintended and intended." *Page 538 
Dorsey I, 881 So.2d at 511. Reasoning that the initial verdict convicting Dorsey of the capital murder of Crane under count 3 was, therefore, legally inconsistent with the later verdict convicting Dorsey of the felony murder of Crane under count 1, the Court of Criminal Appeals expressed its belief "that the trial court had a duty to reconcile the jury's inconsistent findings concerning Dorsey's intent," 881 So.2d at 513, by submitting that issue to the jury for a third time.
The State agrees with the Court of Criminal Appeals that "[t]he [trial] court was . . . justified in instructing the jury a third time in order to clarify the jury's intent." State's brief, at 86 (emphasis added). The State argues, in pertinent part:
 "The trial court's decision to re-instruct the jury was anything but reversible error. The jury's first set of verdicts was necessarily incomplete because the jury failed to render a decision as to the murders of Williams and Crane under Count One or as to the murders of Cary and Crane under Count Two and did not `literally' render a verdict finding Dorsey guilty of first degree robbery, a necessary predicate to the verdicts of felony murder of Cary and Williams. The court was, therefore, obligated to instruct the jury for a second time on Count One of the indictment in order to obtain a complete verdict.
 "In addition, when the jury returned its second verdict with respect to Count One, it was reasonable for the trial court to surmise that the jury had not intended to rescind its verdict of capital murder under Count Three. Rather the jury had unintentionally created a potential conflict with its verdict of capital murder by focusing on the robbery issue and finding that Dorsey had committed felony murder under Count One when he killed Timothy Bryan Crane during the robbery. The court was thus justified in instructing the jury a third time in order to clarify the jury's intent."
State's brief, at 86 (emphasis added). However, we conclude that Dorsey's conviction under count 1 for the lesser offense of felony murder as to Crane precluded any further consideration of his intent by the jury, and necessarily acquitted him of the capital-murder charge in count 3 of the indictment.
At the conclusion of the guilt phase of Dorsey's trial, the trial court instructed the jury on the capital offenses charged in the indictment. Also, without objection, the trial court instructed the jury on felony murder, as a lesser-included offense under each count of the indictment. The State does not argue that the trial court erred by including felony murder as a lesser-included offense to the capital-murder offense charged in count 3. Therefore, we assume, for the purposes of this appeal, that the trial court's instructions to the jury were correct.
After the jury returned its initial verdicts, the trial court did not accept any of the verdicts. Instead, the trial court reinstructed the jury. With respect to the killing of Crane, the trial court charged the jury on both intentional murder and felony murder. After it deliberated a second time, the jury returned a verdict convicting Dorsey of felony murder as to Crane. That conviction of the lesser-included offense acquitted Dorsey of the greater offense of capital murder. "The conviction for a lesser included offense is an implied acquittal as to the greater offense. Jeffers v. United States, 432 U.S. 137,97 S.Ct. 2207, 53 L.Ed.2d 168 (1977)." Ex parte Ziglar,675 So.2d 543, 545 (Ala.Crim.App. 1996). Indeed, any retrial of Dorsey on a capital-murder charge was, upon his conviction of felony murder, *Page 539 
barred under the principles of double jeopardy. See Ex parteWhirley, 530 So.2d 865, 867 (Ala. 1988). Thus, the trial court was under a duty to accept Dorsey's conviction of the felony murder of Crane and to acquit him of the capital-murder charges.
The State argues that "it was reasonable for the trial court to surmise that the jury had not intended[, by its felony-murder conviction,] to rescind its verdict of capital murder under Count Three." State's brief, at 86. Thus, the State argues, "[t]he [trial] court was . . . justified in instructing the jury a third time in order to clarify the jury's intent." State's brief, at 86. However, the State cites no authority in support of these arguments, and we are aware of no authority permitting an inquiry into a jury's intent, following its return of a complete, unambiguous verdict. At any rate, the jury's verdicts finding Dorsey guilty of felony murder, a lesser-included offense under all counts, necessarily acquitted him of the capital-murder charges, thereby rendering unnecessary any inquiry into the jury's intent.
 IV.
We have reviewed the other issues raised by Dorsey regarding the guilt phase of his trial, and we agree with the Court of Criminal Appeals that Dorsey's convictions for the felony murders of Cary and Williams are due to be affirmed. Therefore, we affirm the judgment of the Court of Criminal Appeals insofar as that court affirmed those felony-murder convictions. However, for the aforesaid reasons, we reverse the judgment of the Court of Criminal Appeals insofar as that court affirmed Dorsey's capital-murder conviction, and we remand the cause to the Court of Criminal Appeals for the entry of an order or for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, LYONS, and HARWOOD, JJ., concur.
JOHNSTONE, J., concurs specially.
MOORE, C.J., and SEE, BROWN, and STUART, JJ., concur in part and dissent in part.
[1] Crane's date of birth was April 15, 1983. The State produced as an exhibit at trial a certified birth certificate.