BASCHAB, Judge.
In case number CC-04-3840, the appellant, Eric Rodney Hammonds, was indicted for reckless murder pursuant to § 13A-6-2(a)(2), Ala.Code 1975, for the death of Rita Michelle Broglen. In case number CC-04-3841, he was indicted for first-degree assault pursuant to § 13A-6-20(a)(3), Ala.Code 1975, with regard to injuries sustained by Stephanie Norman. In case number CC-04-3842, he was indicted for first-degree assault pursuant to § 13A-6-20(a)(3), Ala.Code 1975, with regard to injuries sustained by Elisha Danielle Allison. Finally, in case number CC-04-3843, he was indicted for leaving the scene of an accident pursuant to § 32-10-1, Ala.Code 1975. The jury found the appellant guilty *1040 of reckless murder pursuant to § 13A-6-20(a)(2), Ala.Code 1975, in case number CC-04-3840 and of leaving the scene of an accident in case number CC-04-3843. In case numbers CC-04-3841 and CC-04-3842, the jury found him guilty of the lesser included offenses of second-degree assault pursuant to § 13A-6-21(a)(3), Ala. Code 1975. The trial court sentenced the appellant to serve consecutive terms of ninety-nine years in prison on the reckless murder conviction, ten years in prison on each of the second-degree assault convictions, and one year in the Mobile County Metro Jail on the leaving the scene of an accident conviction. The appellant filed a “Defendant’s Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, Motion for New Trial,” which the trial court denied after conducting a hearing. This appeal followed.
The State presented evidence that, during the evening of March 7, 2004, and the early morning hours of March 8, 2004, the appellant was drinking at Jewel’s Lounge; that the appellant left Jewel’s Lounge and got into his Nissan truck; that, as the appellant was leaving the parking lot, he hit a vehicle that belonged to Michael Ha-vard; that Michael Havard told the appellant that he had hit his vehicle; and that the appellant ran a red light, left the parking lot, and proceeded onto Lott Road. The State also presented evidence that the appellant was traveling south on Lott Road; that Bobby Smith and his wife were in a vehicle that was traveling north on Lott Road; that Stephanie Norman was driving a vehicle that was traveling north on Lott Road behind Smith’s vehicle; that Rita Michelle Broglen, Elisha Danielle Allison, Cassie Peacock, and Sheila Patton were in the vehicle with Norman; that, at some point, the appellant crossed the center line of Lott Road and was in the northbound lane traveling south; that Smith saw the appellant’s vehicle in his lane and swerved off of the road; that the appellant’s vehicle hit the back of Smith’s vehicle; that Norman saw Smith’s vehicle swerve off of the road and then saw headlights in her lane; that Norman tried to swerve out of the way; and that the appellant’s vehicle hit the vehicle Norman was driving. The State further presented evidence that Bro-glen died instantaneously as a result of the injuries she received during the accident; that Allison’s pelvis was fractured; and that Norman’s left heel was crushed. Finally, the State presented evidence that the appellant’s blood alcohol content at the time of the accident was at least 0.195.
I.
The appellant argues that the jury returned inconsistent verdicts in his cases. Specifically, he contends that the reckless murder conviction and the second-degree assault convictions were based on injuries that were caused when he hit the vehicle in which Broglen, Norman, and Allison were traveling and that the jury “found circumstances manifesting extreme indifference to the value of human life in the murder conviction but only found reckless conduct in the assault convictions.” (Appellant’s brief at p. 21.) Section 13A-6-2(a), Ala. Code 1975, provides, in pertinent part:
“A person commits the crime of murder if:
[[Image here]]
“(2)- Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person .... ”
Section 13A-6-20(a), Ala.Code 1975, provides, in pertinent part:
“A person commits the crime of assault in the first degree if:
*1041 [[Image here]]
“(3) Under circumstances manifesting extreme indifference to the value of human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person ...
Further, § 13A-6-21(a), Ala.Code 1975, provides, in pertinent part:
“A person commits the crime of assault in the second degree if the person does any of the following:
[[Image here]]
“(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.”
The Commentary to §§ 13A-6-20 through 13A-6-22, Ala.Code 1975, provides the following with regard to § 13A-6-20(a)(3), Ala. Code 1975:
“Recklessly causing serious physical injury to another by manifesting extreme indifference to human life. In legal contemplation it is sometimes difficult, if not impossible, to demarcate between a positive intent to harm and utter disregard for the safety of others. The provision is the counterpart to murder based on extreme indifference, § 13A-6-2(a)(2). Thus, shooting into a crowd wantonly but without any specific homicidal intent would be first degree assault if the remit was serious but nonfatal, and, if fatal, it would be murder.”
(Emphasis added.) In Ex parte Weems, 463 So.2d 170, 172 (Ala.1984), the Alabama Supreme Court explained the difference between reckless murder and reckless manslaughter as follows:
“Alabama’s homicide statutes were derived from the Model Penal Code. In providing that homicide committed ‘recklessly under circumstances mani-testing extreme indifference to human life’ constitutes murder, the drafters of the model code were attempting to define a degree of recklessness ‘that cannot be fairly distinguished from homicides committed purposely or knowingly.’ Model Penal Code and Commentaries, § 210.02, Comment, 4 (1980). That standard was designed to encompass the category of murder traditionally referred to as ‘depraved heart’ or ‘universal malice’ killings. Examples of such acts include shooting into an occupied house or into a moving automobile or piloting a speedboat through a group of swimmers. See LaFave & Scott, Criminal Law, § 70 (1972).
“Recklessly causing another’s death may give rise to the lesser included offense of manslaughter. A defendant who recklessly causes another’s death commits manslaughter if he ‘consciously disregarded] a substantial and unjustifiable risk that his conduct would cause that result.’ Model Penal Code and Commentaries, § 210.03, Comment 4 (1980). The difference between the circumstances which will support a murder conviction and the degree of risk contemplated by the manslaughter statute is one of degree, not kind. From a comparison of Sections 210.03 and 210.02 of the Model Code, it appears that the degree of recklessness which will support a manslaughter conviction involves a circumstance which is a ‘gross deviation from the standard of conduct that a law-abiding person would observe in the actor’s situation,’ but is not so high that it cannot be ‘fairly distinguished from’ the mental state required in intentional homicides. Compare Comment 4 to § 210.02 with Comment 4 to § 210.03.”
(Footnote omitted.)
Both §§ 13A-6-2(a)(2) and 13A-6-20(a)(3), Ala.Code 1975, require the State *1042 to prove that the defendant acted under circumstances manifesting extreme indifference to human life and that the defendant recklessly engaged in conduct that created a grave risk of death to another person. However, pursuant to § 13A-6-21(a)(3), Ala.Code 1975, the State must prove only that the defendant acted recklessly.
In Carter v. State, 843 So.2d 812, 813-15 (Ala.2002), the Alabama Supreme Court addressed the issue of inconsistent verdicts with regard to multiple victims as follows:
“Triona Carter’s case comes before us for the second time following a reversal of her convictions by the Court of Criminal Appeals. Carter v. State, 843 So.2d 807 (Ala.Crim.App.2001), opinion on remand from the Alabama Supreme Court. The issue now before us is whether, under the doctrine of transferred intent, a defendant can be convicted of an offense as to the unintended victim that is greater than the offense the defendant was convicted of with respect to the intended victim. The Court of Criminal Appeals answered the question in the negative. We reverse and remand.
“As the Court of Criminal Appeals stated in its opinion on remand from this Court:
“ ‘The facts are set forth in the previously issued appellate opinions in this case. Of particular relevance here is that Carter, her boyfriend, Trevas Bell, and her good friend, Ar-timese Johnson, were involved in an altercation with a group composed of Tamiko Smith, Sheri Baker, and Marcus Cephas. Cephas attempted to push Carter, and Bell began fighting with Cephas. As the two men tussled on the ground, Carter hit Cephas, and Cephas knocked Carter to the ground. Carter saw a 9mm pistol on the ground near her, and she picked it up and began firing.... Carter shot and killed Cephas and her friend, Ar-timese Johnson. She also shot and wounded her boyfriend, Bell.’
“843 So.2d at 808.
“The State charged Carter with capital murder as to both deceased victims because two or more persons were killed ‘by one act or pursuant to one scheme or course of conduct,’ § 13A-5-40(a)(10), Ala.Code 1975. The jury was charged on the capital offense, but it was also instructed on the lesser included offenses of intentional murder, provocation manslaughter, and reckless manslaughter. The jury was told to consider the charges separately, and it returned verdicts convicting Carter of intentional murder for the death of Ar-timese Johnson and provocation manslaughter for the death of Marcus Ce-phas.
“Carter appealed; the Court of Criminal Appeals reversed the judgment and remanded the case for a new trial on the grounds that the trial court had erroneously refused to charge the jury on self-defense. Carter v. State, 843 So.2d 798 (Ala.Crim.App.2000). This Court reversed the judgment of the Court of Criminal Appeals and remanded the case, concluding that the evidence indicated that, at the time of the shooting, neither Carter nor her boyfriend was at risk of death or serious bodily injury and that Carter had the ability to retreat, thus negating any claim of self-defense. Canter v. State, 843 So.2d 804 (Ala.2001).
“On remand from this Court, the Court of Criminal Appeals again reversed the convictions and remanded the casé for a new trial. It reversed on the ground that the verdicts were inconsistent because ‘the doctrine of transferred *1043 intent can[not] support a conviction for a greater offense with regard to the unintended victim than for the intended victim.’ 843 So.2d at 810.
“The Court of Criminal Appeals correctly observed that Alabama appellate courts have repeatedly held that ‘the defendant’s liability for the unintended consequences of a criminal act is in the same degree as it would have been had his aim been true and the intended target been injured or killed.’ Carter, 843 So.2d at 810 (opinion on remand). This holding was originally justified ‘ “[u]nder the common-law doctrine of transferred intent, [where] a defendant, who intends to kill one person but instead kills a bystander, is deemed the author of whatever kind of homicide would have been committed had he killed the intended victim.”’ Carter, 843 So.2d at 811, quoting Charles E. Torcía, 2 Wharton’s Criminal Law § 146 (15th ed.1994). Section 13A-6-2(a)(l), Ala. Code 1975, reiterates the doctrine in its definition of murder. The statute provides, in pertinent part, that ‘[a] person commits the crime of murder if ... [w]ith intent to cause the death of another person, he causes the death of that person or of another person .... ’ (Emphasis added.)
“The Court of Criminal Appeals interpreted the doctrine of transferred intent to mean that ‘[w]hen the intent was transferred from Cephas to Johnson, so too did the degree of the offense and any available defenses’ and thus that ‘when the jury found Carter guilty of provocation manslaughter for the death of Marcus Cephas, it thereby limited Carter’s culpability for the death of her friend, Artimese Johnson, to provocation manslaughter.’ 843 So.2d at 811. Because, it reasoned, ‘the jury essentially determined that [Carter] possessed two distinct, and mutually exclusive, mental states’ for one course of conduct, the Court of Criminal Appeals held that the verdicts were legally inconsistent. Id. We disagree.
“In Hammond v. State, 497 So.2d 558, 563 (Ala.Crim.App.1986), the Court of Criminal Appeals explicitly adopted the guidelines of the United States Supreme Court in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), concerning the review of inconsistent verdicts by an appellate court. This Court granted certiorari review, then quashed the writ. In Dunn, the Supreme Court stated:
“ ‘[Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment....
[[Image here]]
“ ‘That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.’
“284 U.S. at 393-94, 52 S.Ct. 189 (citations omitted). Thus, ‘[t]he general rule is that there need be no rational compatibility or consistency between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other.’ Grikis v. State, 552 So.2d 187, 187 (Ala.Crim.App.1989).
“If the verdicts did indeed reflect that Carter possessed tioo distinct mental states regarding the killing of Cephas and Johnson, then the Court of Criminal Appeals would be correct in determining that the verdicts are inconsistent and that that fact requires reversal However, the State contends, and we must agree, that the Court of Criminal *1044 Appeals has misunderstood that a conviction for provocation manslaughter implies a less culpable state of mind by the perpetrator than a conviction for intentional murder.
“Section 13A-6-3(a)(2), Ala.Code 1975, provides that a person commits provocation manslaughter if he
“ ‘causes the death of another person under circumstances that would constitute murder under Section 13A-6-2 [intentional murder]; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to assert itself.’
“(Emphasis added.) Thus, when the jury finds a person guilty of provocation manslaughter, the person is deemed guilty of intentional murder (‘under circumstances that would constitute murder under § 13A-6-2’), but the conviction is reduced to manslaughter because a legally recognized mitigating circumstance (provocation) has been found to exist.
“The Commentary to § 13A-6-3(a)(2) explains that ‘the law, recognizing the frailties of man and his loss of reason and control in certain provocative situations overlooks or forgives the “malice” and mitigates the homicide from murder to a lesser grade.’ (Emphasis added.) The ‘malice,’ or intent, is not negated, but merely forgiven because of the circumstances. As the Court of Criminal Appeals has itself observed in the past: ‘Heat-of-passion provocation implies that [the defendant’s] actions were intentional but that, because of the circumstances, they were excused by law.’ McGriff v. State, [908] So.2d [961], [1005] (Ala.Crim.App.2000). In fact, as the Wisconsin Supreme Court has succinctly stated: ‘[M]any such homicides [i.e., those resulting from heat-of-passion provocation] do involve an actual intent to take the life of another. This very intent is typically the result of the heat of passion.’ State v. Lee, 108 Wis.2d 1, 9, 321 N.W.2d 108, 112 (1982). In sum, provocation does not negate intent.
“Thus, the jury did not find two distinct mental states for one course of conduct: they found that Carter had the intent to kill, but that in the case of Cephas, her guilt was mitigated by the provocation brought on by his actions toward her. The intent that ‘transferred’ was not lessened by this provocation; only Carter’s guilt in the eyes of the law was lessened because of the factual circumstances. Because this is not a case where the verdicts are ‘mutually exclusive of each other,’ Grikis, 552 So.2d at 187, a reversal is not warranted.”
(Some emphasis added) (footnotes omitted).
In this case, the trial court instructed the jury as follows with regard to the reckless murder charge in case number CC-04-3840:
“This is the indictment. The grand jury charges that Erie Rodney Hammonds, did, under circumstances manifesting extreme indifference to human life, recklessly engage in conduct which created a grave risk of death to other persons, and thereby caused the death of Rita Michelle Broglen; to-wit, driving under the influence of alcohol, crossing the center line of a road and striking the vehicle driven by Stephanie Norman in which Rita Michelle Broglen was a passenger in violation of the law and against the peace and dignity of the State of Alabama. So let’s define — that’s murder and that’s the indictment. Now, to convict, the State must prove beyond a reasonable doubt each of the elements of *1045 murder, that Rita Michelle Broglen, also known as Michelle Broglen, is dead; that the Defendant Eric Hammonds caused the death of Rita Michelle Bro-glen by driving under the influence of alcohol and crossing the center line of the road and striking the vehicle driven by Stephanie Norman in which Ms. Bro-glen was a passenger, and, this is the more difficult, in committing the acts which caused the death of Rita Michelle Broglen, the Defendant acted with extreme indifference to human life. Extreme indifference means a person acts with extreme indifference to human life if under the circumstances the actor recklessly engages in conduct which creates a grave risk of death to a person other than himself. A person acts recklessly with respect to that conduct when the actor is aware of a substantial and unjustifiable risk that a result could occur but consciously disregards that substantial and unjustifiable risk. The risk of death to another must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of conduct which a reasonable person would observe under those circumstances.”
(R. 631-32.) With regard to the first-degree assault charge in case number CC-04-3841, the trial court instructed the jury as follows:
“Now we come to the Norman case, Stephanie Norman. The indictment reads, the grand jury charges that Eric Hammonds, did, with extreme indifference to the value of human life ... recklessly engaged in conduct which created a grave risk of death to Stephanie Norman and thereby caused serious physical injury to Stephanie Norman by driving under the influence of alcohol, crossing the center line and striking the vehicle that was being driven by Stephanie Norman in violation of the law and against the peace and dignity of the State of Alabama.
“All right. Now, let’s see what assault in the first degree is and what the State has got to prove beyond a reasonable doubt; that the Defendant caused the serious physical injury to — caused serious physical injury to any person, namely Stephanie Norman; that the Defendant was recklessly engaged in conduct which created a grave risk of death to another person; and the Defendant was acting under circumstances manifesting extreme indifference to the value of human life. Serious physical injury is required here. A serious physical injury means injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss of impairment of a function of a body organ. A person acts recklessly with respect to a result or to a circumstance described by the statute defining an offense when he’s aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person acts with extreme indifference to human life if under the circumstances the actor engages in conduct which creates a grave risk of death to a person other than himself.”
(R. 639-41.) With regard to the first-degree assault charge in case number CC-04-3842, the trial court instructed the jury as follows:
“We then come to Danielle Allison or Elisha Danielle Allison. The grand jury charges that Eric Rodney Hammonds, did, with extreme indifference to the *1046 value of human life, ... recklessly engaged in conduct which created a grave risk of death to Elisha Danielle Allison and therefore caused serious physical injury to her, to Elisha Danielle Allison, by driving under the influence of alcohol and crossing the center line and striking the vehicle that’s being driven by Stephanie Norman in which Elisha Danielle Allison was a passenger in violation of the Code of Alabama and against the peace and dignity of the State of Alabama. Now the same charge, the same charge that I gave you on Ms. Norman also applies to Ms. Allison. You got the assault in the first, assault in the second, and the assault in the third. And I’m not going to read all of this charge to you because I think you can remember what I just read to you before. But here are the elements on the assault in the first degree, they got to prove beyond a reasonable doubt that the Defendant caused serious physical injury to Danielle — Elisha Danielle Allison, serious physical injury; that the Defendant was recklessly engaged in conduct that created a grave risk of death to another person and that the Defendant was acting under circumstances manifesting extreme indifference to human life. And I have previously defined to you what serious physical injury means. I have previously defined to you what reckless mean[s] and I’ve previously read to you what extreme indifference means.”
(R. 643-45.)
In response to questions from the jury, the following occurred:
“THE COURT: ... I’m going to sort of talk to you because you are the spokesman so to speak. The first question can be answered in this way, you want to know if you find one way on one count, does that automatically mean you find the — no, it does not. Each case is to be determined on its own merits and you should focus on each individual case and nothing falls automatically except within the parameters of the verdict forms, you can’t stray out of that. But that’s — they don’t automatically follow.
“The other thing I don’t quite follow but we’ll get you to explain it. The definition of each level of assault and then I think you meant and murder too.
“THE FOREMAN: Right.
“THE COURT: Well, we can read that again to you. I don’t know that you — if you really want me to go through the entire, for instance, here is the definition of murder and I’ll show it to you so you’ll see what I’m talking about. The first paragraph here is the definition of murder, then I break it down into elements and descriptions of what do you mean by extreme indifference, what do you mean by recklessly? Now do you want me to go through this whole thing again or just the definition of murder? All right. I tell you what, let me just read the definition. Quite frankly, the definition of murder and all of these charges they try to break it down and I’ll show you what I mean. Now, here is murder. A person commits the crime of murder if he causes the death of another person. So then they stop right there and they’d say, so to convict the State has got to prove beyond a reasonable doubt that, Rita Michelle Broglen also known as Michelle Broglen is dead. So they take each sentence and break it down one, two, three, four. That’s what they’re doing. Now I’m going to read the definition of murder without all the one, two, three, four stuff, because if you’ll listen, it will all fall into place. A person commits the crime of murder if he causes the death of another person, and in doing the act that caused the death of that person, he *1047 recklessly engages in conduct which creates a grave risk of death to a person which under circumstances manifests or shows extreme indifference to human life. That is the definition. Now, when you go back there and you say, well, wait a minute, I don’t exactly understand what extreme indifference to human life or recklessly means, then I can read you further additional words. Now, that’s murder. Do you want— Does that also include what you want to listen to the lesser includeds?
“THE FOREMAN: (The foreman shakes his head in the negative.)
“THE COURT: Okay. Just the murder. That’s murder. Now let’s consider the assault. You do want to know about the different types of assaults, right?
“THE FOREMAN: Yes, sir.
“THE COURT: First, second and third. Here this — and this is the same way, you start off with the definition and then they break it down. Here is assault in the first. A person commits the offense of assault in the first degree if he causes serious physical injury to any person while recklessly engaging in conduct which creates a grave risk of death to another person and under circumstances showing extreme indifference to the value of human life. So then we get into the lesser included of assault in the second and this is a little bit shorter. A person commits the crime of assault in the second degree if the person recklessly causes serious physical injury to another by means of a deadly instrument, the truck. And assault in the third is— and it’s much simpler. A person commits the offense of assault in the third if he recklessly causes physical injury to a person, not serious physical injury, but physical injury.”
(R. 659-63.) Subsequently, in response to an additional question, the trial court instructed the jury as follows:
“All right. Now, what let’s see here ... we have another question. And I think I can answer that. Let’s — You want to know the — distinguish between murder and manslaughter and what makes them different. Let’s start off with manslaughter, which is the lesser included offense. A person causes — commits the crime of manslaughter if he recklessly causes the death of another person. Recklessly kills. Now, the murder has that and more and let’s read about it. A person commits the crime of murder if he causes the death of another and in performing the acts that caused the death of that person, he recklessly engages in conduct. There is the word recklessly. And manslaughter it was recklessly causes the death and murder it’s recklessly engages in conduct. But then it goes on and it’s more. It’s more than just — you remember how I said recklessly caused the death of others and stop. And the manslaughter I said that’s it, stop. And this one we keep on going, recklessly engages in conduct that creates a grave risk of death to a person under circumstances manifesting an extreme indifference to human life. So it seems that the murder has this additional element of extreme indifference to human life. So let’s see what that is. Extreme indifference, a person acts with extreme indifference to human life if under the circumstances the actor recklessly engages in conduct which creates a grave risk of death to a person other than himself. Now, as I see this, I’m not sure that that is helpful but it’s grave risk of reckless engaging conduct created a grave risk of death to a person under circumstances showing extreme indifference to human life. Extreme in *1048 difference to human life. Now, that’s the difference.... ”
(R. 665-66.)
The jury found the appellant guilty of the reckless murder of Broglen pursuant to § 13A-6-20(a)(2), Ala.Code 1975, and guilty of the lesser-included offenses of second-degree assault with regard to the injuries sustained by Norman and Allison. All three of those convictions arose from the automobile accident in which Broglen was killed and Norman and Allison were injured, and all three of the victims were in the same vehicle at the time of the accident. Therefore, all three convictions were based on one course of conduct and one set of circumstances.
By finding the appellant guilty of reckless murder, the jury found that the appellant had recklessly engaged in conduct that created a grave risk of death to another person and that the appellant had acted under circumstances manifesting extreme indifference to human life. However, by finding the appellant guilty of the lesser included offense of second-degree assault in case numbers CC-04-3841 and CC-04-3842, the jury implicitly acquitted the appellant of first-degree assault in both of those cases. See Ex parte Dorsey, 881 So.2d 533, 538 (Ala.2003) (holding that “ ‘[t]he conviction for a lesser included offense is an implied acquittal as to the greater offense. Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).’ Ex parte Ziglar, 675 So.2d 543, 545 (Ala.Crim.App.1996).”). Thus, although the jury found that the appellant acted recklessly in case numbers CC-04-3841 and CC-04-3842, it also implicitly found that he did not act under circumstances manifesting an extreme indifference to human life and that he did not engage in conduct that created a grave risk of death to another person.[1] Therefore, the jury found two distinct degrees of culpability for one course of conduct that arose from one set of circumstances, and the verdict in case number CC-04-3840 was inconsistent with the verdicts in case numbers CC-04-3841 and CC-04-3842. Cf. Carter, supra. Because the jury implicitly acquitted the appellant of acting under circumstances manifesting an extreme indifference to human life and of engaging in conduct that created a grave risk of death to another in case numbers CC-04-3841 and CC-04-3842, he could not be found guilty of acting under circumstances manifesting an extreme indifference to human life and of engaging in conduct that created a grave risk of death to another in case number CC-04-3840. See Heard v. State, 999 So.2d 982 (Ala.Crim.App.2002) (opinion on remand from *1049 Supreme Court); Dorsey, supra. Consequently, the appellant’s reckless murder conviction must be reversed.
However, the trial court instructed the jury on the lesser included offense of reckless manslaughter pursuant to § 13A-6 — 3(a)(1), Ala.Code 1975, and the jury found that the appellant had acted recklessly in case numbers CC-04-3841 and CC-04-3842. Also, the evidence presented during the trial clearly supported a conviction for the lesser included offense of reckless manslaughter. “Appellate courts have the ‘inherent authority to reverse a conviction while at the same time ordering an entry of judgment on a lesser included offense.’ Edwards v. State, 452 So.2d 506, 507 (Ala.Crim.App.1983), aff'd, 452 So.2d 508 (Ala.1984).” Campbell v. State, 555 So.2d 252, 254 (Ala.Crim.App.1989). Accordingly, we remand this case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of reckless manslaughter and impose a sentence for that offense.
II.
The appellant also argues that the indictments were multiplicitous. Specifically, he contends that “driving under the influence of alcohol was the single criminal act giving rise to this prosecution for murder, assault, second degree and leaving the scene of an accident.” (Appellant’s brief at p. 24.)
“The concept of multiplicity is discussed in 2 LaFave & Israel, Criminal Procedure, § 19.2(e) (1984):
“ ‘A multiplicitous indictment charges a single offense in several counts. It is often the product of a prosecutor’s mistaken assumption that a particular statute creates several separate offenses rather than a single crime that can be accomplished through multiple means. A multiplicity issue is also presented when a series of repeated acts are charged as separate crimes but the defendant claims they are part of a continuous transaction and therefore a single crime.” ’
Evans v. State, 794 So.2d 415, 430 (Ala.Crim.App.2000)(emphasis added).
Contrary to the appellant’s assertions, his conviction for leaving the scene of the accident did not arise from the same criminal act that formed the basis for his reckless murder and second-degree assault convictions. Also, the fact that the appellant was driving while intoxicated did not form the basis for the leaving the scene of an accident conviction. Rather, the conviction for leaving the scene of an accident was based on the fact that the appellant did not stop and provide the required information after he hit Havard’s vehicle and damaged it, which occurred before he collided with the vehicle Norman was driving. Therefore, the indictments were not multi-plicitous in that regard.
With regard to the indictments charging the appellant with reckless murder and first-degree assault, all of those charges arose from a single act. However, the Alabama Supreme Court has specifically held that “ §§ 13A-1-8(b) and 15-3-8[, Ala.Code 1975,] will allow more than one prosecution and conviction when more than one person is injured as a result of a single criminal act.” McKinney v. State, 511 So.2d 220, 225 (Ala.1987). Because the indictment charging the appellant with reckless murder and each of the indictments charging him with first-degree assault involved separate victims, those indictments were not multiplicitous.
III.
The appellant further argues that there was a variance between the *1050 allegations included in the reckless murder indictment and the evidence presented at trial. Specifically, he contends that he should have been indicted for vehicular homicide pursuant to § 32-5A-192, Ala. Code 1975, rather than reckless murder pursuant to § 13A-6-2(a)(2), Ala.Code 1975, because the evidence presented at trial showed “that as a result of his violation of a rule of the road; to-wit: driving under the influence of alcohol, the death of Broglen occurred and Allison and Norman received injuries.” (Appellant’s brief at p. 27.)[2] However, the Commentary to § 32-5A-192, Ala.Code 1975, provides, in pertinent part:
“This section is not a bar to prosecution under article 1 of chapter 6 of Title 13A which is the homicide sections of the Criminal Code.”
See also Duncan v. State, 473 So.2d 1203 (Ala.Crim.App.1985). Therefore, the appellant’s argument is without merit.
TV.
 Next, the appellant argues that the trial court erroneously admitted evidence about his prior arrests for driving under the influence of alcohol. Specifically, he contends that
“[t]he Fifth Amendment to the United States Constitution provides that a defendant is presumed innocent unless and until the state proves his guilt beyond a reasonable doubt. The admission of Hammonds’ prior arrests for DUI which are pending violate that fundamental provision of our withering constitutionally protected rights. Due to that presumption of innocence, it is legally inconceivable to treat those arrests as evidence of reckless behavior as they were used in Hammond’s case.”
(Appellant’s brief at p. 29.) However, the appellant did not present his Fifth Amendment argument to the trial court. “ ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).” Miller v. State, 602 So.2d 488, 496 (Ala.Crim. App.1992). Therefore, the appellant’s Fifth Amendment argument is not properly before this court.
The appellant also argues that the admission of evidence about prior instances of driving under the influence of alcohol violated Rule 404(b), Ala. R. Evid. Before the trial started, the appellant made a motion in limine to exclude such evidence, and the trial court denied the motion.
“ ‘A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary.’
“Miles v. State, 650 So.2d 583, 586 (Ala. Cr.App.1994), quoting, Parks v. State, 587 So.2d 1012 (Ala.1991).”
Grimsley v. State, 678 So.2d 1197, 1208 (Ala.Crim.App.1996). The record does not reflect that, when it denied the motion in limine, the trial court agreed that a subsequent objection would not be necessary. *1051 Also, the appellant did not object on this specific ground when the State presented evidence about the prior instances of driving under the influence of alcohol. Therefore, this argument is not properly before this court. See Grimsley, supra; Miller, supra.
V.
Finally, the appellant argues that the trial court erroneously admitted into evidence statements he had made to an attorney in a civil case that arose from this incident. Specifically, he contends that the State did not give him copies of those statements during discovery.[3] The morning the appellant’s trial began, the State informed the trial court that it had just discovered that the appellant had made statements to an attorney in a civil case relating to this incident. At that time, the State gave copies of the statements to the defense. Rule 16.1(a), Ala. R.Crim. P., provides, in pertinent part:
“Statements of Defendant. Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown:
“(1) Permit the defendant to inspect and to copy any written or recorded statements made by the defendant to any law enforcement officer, official, or employee which are within the possession, custody, or control of the state/municipality, the existence of which is known to the prosecutor
[[Image here]]
The appellant’s statements were not made to a law enforcement officer, official, or employee. Rather, they were made to an attorney in a civil case that arose from this incident. Further, the statements were not in the control of the State or a municipality. Finally, the State did not learn about the existence of the statements until the morning the appellant’s trial began. Therefore, the State was not required to disclose the statements to the appellant during discovery. Accordingly, the trial court properly admitted the statements into evidence.
For the above-stated reasons, we affirm the appellant’s convictions and sentences for second-degree assault in case numbers CC-04-3841 and CC-04-3842 and for leaving the scene of an accident in case number CC-04-3843. However, we reverse the appellant’s conviction for reckless murder in case number CC-04-3840 and remand the case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of reckless manslaughter and impose a sentence for that offense. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
*1052 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS. 
McMILLAN, P.J., and COBB, J., concur.
SHAW, J., concurs in part and dissents in part, with opinion, which WISE, J., joins.

. The dissent focuses on the fact that the first-degree assault indictments alleged that the appellant engaged in conduct that created a grave risk of death to Norman and Allison and the fact that the trial court read the indictments to the jury. Based upon those facts, the dissent speculates that the jury could have found that the appellant did not create a grave risk of death to Norman and Allison and that, therefore, the verdicts are not necessarily inconsistent However, this ignores the fact that, when the trial court instructed the jury on first-degree assault, it stated that "[a] person acts with extreme indifference to human life if under the circumstances the actor engages in conduct which creates a grave risk of death to a person other than himself.” (R. 641) (emphasis added). The trial court gave the same definition of extreme indifference when it instructed the jury on the elements of reckless murder. (R. 632.) Based on the trial court’s instructions regarding the elements of the offense of first-degree assault, the jury's rejection of the first-degree assault charges necessarily involved a finding that the appellant did not act under circumstances manifesting extreme indifference to human life and that he did not engage in conduct that created a grave risk of death to another person. Any speculation as to why the jury reached this result is irrelevant.

. To the extent the appellant attempts to add an argument that there was a variance between the allegations included in the first-degree assault indictment and the evidence presented at trial, that argument is not properly before this court because he raised it for the first time in his reply brief. See McCall v. State, 565 So.2d 1163 (Ala.Crim.App.1990) (holding that new issues may not be raised for the first time in a reply brief).

. The appellant also refers to a motion for a new trial that he had "recently” filed regarding an exculpatory statement made to the civil attorney who took these statements. (Appellant's brief at p. 34.) However, no such motion is included in the record on appeal. " ' "This court is bound by the record and not by allegations or arguments in brief reciting matters not disclosed by the record.” Moore v. State, 457 So.2d 981, 989 (Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985).' Garnett v. State, 555 So.2d 1153 (Ala.Crim.App.1989).” Similton v. State, 672 So.2d 1363, 1366 (Ala.Crim.App.1995). Therefore, we cannot consider the appellant’s allegations regarding such a motion.